[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Norwalk, Connecticut on September 5, 1981. They have been living separate and apart since the husband moved out of the family residence in January of 2001. There are two children of the marriage, to wit; Justin, born October 22, 1986, and Steven, born July 26, 1990. Both children reside primarily with the mother in the family home at 47 Lois Street, Norwalk, Connecticut. The parties reached a stipulated agreement with regard to custody and visitation dated January 16, 2002.
The husband is 42 years old and has four years of college although he has not obtained a degree. He worked at a variety of jobs throughout the marriage, primarily as a roofer, a carpenter. and at the Darien Dinner Theater. In addition, he has done a considerable amount of volunteer work and politics. At present, he is town clerk of the City of Norwalk, which CT Page 5563 is an elective position, at an annual gross salary of $65,675. He has health insurance available to him and the children, and he participates in a retirement plan.
The wife is 45 years old and has two years of college. She received an Associate's degree in Early Childhood Learning and described herself as in good health. She has held a variety of part-time positions throughout the marriage. At present, she is a teacher in the religious school at the Conservative Synagogue in Westport. She earns $12,500 for a ten-month term, and likes her job "very much." There is the possibility of summer work. Throughout the marriage she never earned more than her current salary. She indicated that she would like to return to school and obtain a Bachelor's degree
The principal asset of the parties is the family home at 47 Lois Lane, Norwalk. Title to the home is presently in the husband's name, as is the first mortgage. There is a second mortgage in the form of a home equity loan which is in both names. The fair market value of the premises is $275,000. The balance of both mortgages is approximately $55,000, and the present net equity is $220,000. Throughout the marriage the parties have been the recipients of many gifts from the husband's family, including a large gift in the amount of $125,000 from the husband's mother at the time of the original purchase in March 1992. At that time, the cost of the house was $175,000 together with closing fees. The husband contends that he should receive some form of a credit for this due to the source of the funds, although he is not claiming a 100% credit. As to the current balance of the home equity loan, it was used for the most part to pay for their older son's bar mitzvah which cost $35,000.
Perhaps, the largest point of controversy between the parties surrounding the wife's cashing in of the custodial funds of both of the boys at Fleet Bank which accounts were listed with the husband as custodian. The wife ultimately replaced the funds in a different bank, however, not before the husband filed a complaint with the police charging his wife with forgery. At present there are two parallel accounts for the boys since the husband also made good the funds in the Fleet Bank.
The wife has health insurance through her employment with PHS. The husband has health insurance through his employer, although the COBRA coverage is available to the wife. The children are covered under the Huskey plan for which the wife seems satisfied.
The parties both testified that the principal strain and stress in the marriage was money. As indicated above, the husband held a variety of jobs which, together with his volunteer work and politics kept him away CT Page 5564 from the home quite a bit. According to the wife, there "never was a steady paycheck" until his job at Main Roofing. The wife felt that she bore the physical and emotional burden of rearing the family, in addition to her part-time work. The weight she said was "all on her shoulders." She testified that the husband was "always very critical of her" both in public and in private. The husband testified that the wife was not supportive of his political efforts and became "argumentative and lethargic" following the birth of their second child. He said that the controversy escalated to the breaking point in approximately July or August of 1999. He told his wife that he was "unhappy." In 1990, he had a duodenal ulcer and suffered from acid reflux disease. Neither condition has recurred since he moved out of the house. He is currently living with another person to whom he claims he pays a portion of the household expenses. The court places a greater burden on the husband for the breakdown, but it does not believe that his current relationship was the cause.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown, however, after listening to the testimony of both parties, the court believes that the husband's pursuit of his own life's goals and interests took precedence over those of his family responsibilities and was the principal cause of the breakdown.
4. That the presumptive basic child support is $309.00 per week; and that the husband's share is $242.00, however, the Court finds that it is appropriate and equitable to apply the deviation criteria set forth in Section 46b-215a-3 (b)(5) of the Child Support and Arrearage Guidelines Regulations on the basis of the coordination of total family support.
5. That each of the parties is in apparent good health and is currently employed; and that given their ages and the fact that each has asked for a time-limited order of alimony, an award of time-limited alimony is appropriate. CT Page 5565
6. That during the pendency of the present action, the wife closed two custodian accounts of the minor children in which the husband was the named custodian; that the wife did so without permission, but with the mistaken belief that she had authority to do so; that the husband's filing of a police complaint was, under all the circumstances, unwarranted, an overreaction to the situation, and motivated in part to cause his wife extreme distress and embarrassment in the community; and that the wife replaced the funds within a reasonable time.
7. That the parties have entered into a Stipulation (#121) regarding custody and visitation of the minor children dated January 16, 2002, which the court finds to be fair and equitable and in the best interest of said children.
8. That the fair market value of the premises at 47 Lois Street, Norwalk, Connecticut, is $275,000; that the legal title to same is in the sole name of the husband; that there is a first mortgage having a balance of approximately $40,000 and a home equity line in the amount of approximately $15,000; that the equity is approximately $220,000; that both parties have substantially contributed to the maintenance and preservation of this asset; that the husband's mother made a gift to the parties m the amount of $125,000 at the time of the original purchase; that the property is a marital asset subject to equitable division; that the property is the principal residence of the minor children; that the court has accorded substantial weight to the length of the marriage, the wife's contributions as homemaker, and the husband's greater capacity to acquire assets and estate in the future; and that it is equitable and appropriate that both parties share the equity in this asset.
 ORDERS
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. Custody of and visitation with the minor children shall be in accordance with the Stipulation of the parties dated January 16, 2002, as on file with the court, a copy of which is attached hereto and made a part hereof as Schedule A.
3. Commencing May 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $2,000.00 as and for periodic unallocated alimony and child support, until the death of either party, the remarriage of the wife, or April 30, 2012, whichever shall sooner occur. CT Page 5566 In the event that the alimony shall terminate for whatever reason and either or both children are minors, commencing with the first day of the first month following such termination, and monthly thereafter, the husband shall pay to the wife a sum consistent with the then existing Child support Guidelines or as the court may otherwise direct, as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall again be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
4. The wife shall have exclusive possession of the real estate located at 47 Lois Street, Norwalk, Connecticut, subject to any existing indebtedness, and she shall be responsible for the payment of the existing first mortgage, real estate taxes, and insurance, and she shall be entitled to the deduction for same. The husband shall be liable for the payment of the monthly payment and other carrying charges for the existing home equity line, and he shall be entitled to the deduction for same. Neither party shall draw any further advances against said home equity line over and above the current balance of $14,000 without an agreement of the parties or further order of court. Within thirty (30) days from the date hereof, the husband shall convey a one-half (1/2) interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. As to said real estate, the parties shall list same for sale no later than April 1, 2009, with a mutually acceptable broker who is a member of the Multiple Listing Service or other similar organization, familiar with real estate values in the Norwalk area, at an agreed-upon asking price. If the parties are unable to agree upon a broker, each shall choose a broker who, in turn shall pick third broker, and the listing price shall be the average of all three brokers. Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 3% of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, and any mortgages and liens. After the payment of these sums, the net proceeds shall be divided 50% to the husband and 50% to the wife.
While she occupies same, the wife shall have the sole responsibility for repairs costing $250 or less. Both parties shall share the cost of any maintenance, repairs, or replacements in excess of $250 in the same proportion as their share of the net proceeds. Either party may advance CT Page 5567 the full cost of same and an adjustment shall be made at time of sale or transfer. Neither party shall further encumber the property or draw on any home equity without the agreement of the other. The Court shall retain jurisdiction with regard to any conflicts arising out of this issue.
4. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. Each party shall be entitled to keep their respective savings, checking, CDs, and money market accounts free and clear of any claims by the other.
5. In the event that the minor children are no longer covered by the Huskey Plan, the husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child, and provided same continues to be an incident of his employment and available to him at a reasonable cost. Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 55% by the husband and 45% by the wife. The provisions of Section46b-84 (e) C.G.S. shall apply.
6. The husband shall maintain the existing Primerica Life insurance policy in the amount of $200,000, and shall name the minor children as equal beneficiaries thereof for so long as he has an obligation to pay child support for either or both under the terms of this decree.
7. Each party shall be entitled to retain their respective retirement accounts, including 401(k) and 414(h) accounts free and clear of any claims by the other.
8. Commencing with the tax year 2002 and thereafter, the husband shall be entitled to the tax exemption for the minor child Justin Garfunkel, CT Page 5568 and the wife shall be entitled to the exemption for the minor child Steven Garfunkel. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
9. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
10. The wife shall remain custodian of the funds which she is holding for the benefit of the minor children at First Union, and consistent with the provisions of the Uniform Transfers to Minors Act, the husband shall be custodian for the minor children of the accounts at Fleet in which he replaced the funds previously removed by the wife, and he shall indemnify and hold the wife harmless from any further liability therewith.
11. Each party shall be responsible for their respective attorney's fees and costs incurred in connection with this action.
12. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
 BY THE COURT ___________________ SHAY, J.
 EXHIBIT A*